[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Westport, Connecticut on September 27, 1981. The only child of this marriage is Rachel Birnbach born May 29, 1984. The parties filed a written stipulation that the marriage has broken down irretrievably; therefore, a decree of dissolution may enter on that ground pursuant to § 46b-40(c) of the General Statutes.
Each person testified the other caused the marriage to breakdown. From their conflicting testimony, the court finds that it was caused by their different personalities, values, expectations and lifestyles. A few years after the marriage, they went into marriage counseling for help. After six years, and with hundreds of sessions with an outstanding psychiatrist, they were still unable to resolve their differences. The husband's admitted extramarital affair in April, 1993, occurred after the marital breakdown and was not a significant cause. The court finds neither party at fault.
Both parties are college graduates with doctoral degrees in child psychology. During the marriage, they each were able to develop and conduct successful private practices. The husband conceded that the wife worked twice as many hours each week thereby earning twice as much as he did, which was another contention. He devoted more time to trying to obtain patents for inventions he created and in speculative investments in which they lost money.
At the time of the marriage, the husband owed about $30,000 in educational loans and the wife had no such debts. His loans were later paid from joint earnings. On the other hand, the CT Page 5277 wife came into the marriage owning a house on Imperial Avenue in Westport. She made the down payment, obtained her own mortgage and paid for the costs of major improvements. There was conflicting testimony on how much labor the husband provided as compared to her father. The court finds that this home was acquired and substantially improved prior to the marriage from the wife's own funds and efforts, including her father's labor. The wife sold this home in October, 1990 and invested the net proceeds of about $153,000 in the Franklin Federal Tax Shelter.
The parties purchased a larger home in July, 1990 at 35 Hyde Park Lane in Westport for $550,000 with a down payment of $110,000 from joint marital funds and a first mortgage of $440,000. The husband moved out in April, 1993 and rented his own apartment in Norwalk, while the wife and Rachel have remained in the home. In January, 1994, this court (Petroni, J.) allowed her to renovate the basement into an office at her own cost and expense. She now conducts her private practice from this home office.
The wife's financial affidavits certified a net weekly income of $1,685 or about $88,000 annually, listed assets of $336,422 and liabilities of $12,400. The husband's affidavit listed his net weekly income at $708 or about $36,800 annually with assets of $116,914 and liabilities of $26,315. The wife's weekly expenses are listed as $2,051 and the husband's are listed as $749.
The husband deposited about $112,000 to his business checking account over the past twelve months. After deducting his business expenses and deposits of about $22,000 from IRA accounts, the court finds his present annual net income is $50,000 rather than the $36,800 he claimed. Even should the annual income be less, the court finds he has an earning capacity of at least $50,000. He has the ability to earn comparable to the wife's annual earnings by increasing his work hours and spending less time on personal pleasures and investments.
Each party developed successful practices in child psychology during this twelve year marriage. The husband is now 50 years of age and the wife is 45. Both enjoy good health and are capable of supporting themselves. The primary issue for the court to decide is child support for Rachel. The court has considered the testimony and the evidence presented, including the claims for relief, and the criteria in § 46b-81 of the General CT Page 5278 Statutes and enters the following orders:
1. ALIMONY
 Neither party is awarded alimony because, as stated previously, each party is self-supporting and able to continue to do so in the future.
 The husband admitted owing $1,500 for two months arrearage of the court's temporary alimony order (Petroni J.); therefore, he is ordered to pay that amount within fifteen (15) days of the date of this judgment. He also admitted paying substantial personal and business debts during the past two months leaving the alimony unpaid. The court expects financial orders awarded in this judgment, including child support, to be paid first. The resentment he may have had for paying his wife's alimony has been eliminated.
2. CUSTODY AND VISITATION
 The parties have agreed to joint legal custody of Rachel. Therefore, all major decisions concerning her health, education, religion and welfare shall be mutually discussed and agreed upon. The minor child's primary residence will be with the wife, and the parties have agreed to a reasonable, flexible and liberal visitation schedule for the husband except for visitation on alternate Sundays. They also disagreed on how to resolve future disputes on joint custody issues and on the husband's ability to make routine decisions during his visitation.
 The court finds that disputes on joint legal custody issues shall be resolved by this court if they should arise. The court further finds that it is in Rachel's best interest that the husband make routine decisions for her during his visitations and that the present alternate Sunday visitation hours of 5:00 p.m. to 8:00 p.m. be increased to overnight visitation with the husband. The husband shall return the child directly to school on Monday. The overnight visitation is granted based on the husband's representation that Rachel would be staying with him in Norwalk on that alternate Sunday.
 The remainder of the visitation schedule, including vacations and holidays, has been agreed to by the parties and is set CT Page 5279 forth in the wife's claims for relief. The court orders the attorney for the mother to prepare the judgment file and attach said visitation schedule to said judgment.
3. CHILD SUPPORT
 The court considers this to be one of the most important issues to be decided. Using the child support guidelines, the husband claimed he owed $111.30 a week based on a net income of $503.65. The wife claimed he owed $167.44 based on a net weekly income of $824.59. In either case, the combined weekly income of the parties exceeds the $1,500 limitation of said guidelines; therefore, the court is not bound by them, although it has considered them. Battersby v. Battersby, 218 Conn. 467, 473 (1993). The court's award of child support is based on the statutory criteria of § 46b-56(c) of the General Statutes relative primarily to the financial ability of the parties and the age and needs of the child. Battersby v. Battersby, supra.
 General Statutes § 46b-56(c) provides that "In determining whether a child is in need of support and, if in need, the respective abilities of the parents to provide support, the court shall take into consideration all the factors enumerated in Section 46b-84." The statutory criteria enumerated in § 46b-84 (b) include, inter alia, the earning capacity, vocational skills and employability of each of the parents in determining the abilities of the parents to provide adequate support for the child. The age and needs of the child are also to be considered.
 Rachel is a bright ten year old child attending fourth grade in a Westport public elementary school which she enjoys. She also has many other interests and is taking music lessons, plays soccer, goes to summer camp and attends Hebrew school to name a few. These extracurricular activities alone cost approximately $650 a month. Both parties agree that these activities are beneficial to Rachel's proper development and should be continued. They also testified that Rachel has been emotionally disturbed by the divorce proceedings and may need professional counseling, which will be an additional cost.
 There is no doubt that both parties love their daughter and she loves them. Their agreement to joint legal custody and CT Page 5280 liberal visitation to the husband as noncustodial parent confirms it.
 The court has found that the husband's current net annual income is about $50,000 and his earning capacity could be more if he worked harder. The child has extraordinary expenses for her many activities which both parties have encouraged. Each party has an equal responsibility to support Rachel and have provided for her generously in the past. This duty should continue until Rachel reaches her majority. Furthermore, the court has rejected the wife's claim for $750 a month alimony; therefore, the husband will not have this obligation.
 Based on these facts, the court orders the husband to pay child support of $1,000 a month to the wife beginning June 1, 1994 and continuing on the first day of each month until Rachel reaches eighteen years of age.
The court finds that it is in Rachel's best interest to remain in the marital home for the next four years. By doing so, she may continue to attend the same elementary school until she enters high school. By going to the same school for the next four years, her present friendships there will grow. These are formative years for Rachel, and she needs stability and structure over the next four years considering the emotional problems this divorce is causing her at present. It is in her best interest to stay in this home for several other reasons. The mother now has her office in the home and will be there when Rachel returns from school each day; therefore the mother will be able to spend more time with her than when she rented her office outside the home. Having lived in the marital home since 1990, the child is familiar with the surroundings.
The husband requests an order that the house be sold immediately because the cost of maintaining it is over $4,000 a month and that this large ten room house is unnecessary for the two of them. He believes Rachel can easily adjust in a smaller home and can find new friends if she attends a different school. The wife conceded that the monthly mortgage payment is presently $2,840. During the past year, the wife has paid over $40,000 from her Franklin Fund to maintain the home and for renovating the office space. She is willing to continue invading this Fund over the next four years in order for she and Rachel to remain in this home. The husband's arguments for an immediate sale were CT Page 5281 unpersuasive. The least the husband should do is contribute to the payment of the joint mortgage debt during this period and the following order shall enter:
4. Based on the above findings, the court orders the husband to pay the wife $600 a month beginning June 1, 1994 and a like amount on the first day of each month thereafter, until the house is sold or transferred to the wife. The husband shall receive a credit for one-half of the amount he has paid at the time of closing of title to a third party or if the wife purchases the home from him sooner.
The court has considered all the criteria in § 46b-81, the assignment of assets statute, the case law, the evidence and testimony and the respective claims for relief and enters the following additional orders:
5. SALE OF THE JOINTLY OWNED MARITAL PROPERTY 35 HYDE LANE WESTPORT, CONNECTICUT
 This real estate shall be listed for sale on July 1, 1998, or sooner at the wife's option. The wife shall have exclusive possession of the home until it is sold. Until such time as the house is sold, the husband shall contribute $600 a month towards the joint mortgage debt and the wife shall be responsible for the payment of the mortgage, taxes, insurance and costs of maintenance and shall hold the husband harmless for said expenses except for the amount of the husband's payment.
 The parties shall cooperate on establishing a listing price and selecting the real estate broker. If they are unable to agree, they shall each select an appraiser and the two appraisers shall agree. If they cannot agree, they shall select a third appraiser and the listing price shall be the average of the three appraisals. Any cost or expense connected with the appraisal process shall be shared equally by the parties. This same appraisal process shall be followed if the wife decides to purchase the real estate from the husband within the next four years.
 The net proceeds from any sale to a third party shall be divided equally (fifty percent each) between the parties, which shall be the gross sales price less the mortgage debt, real estate commissions, attorneys fees, conveyance taxes and CT Page 5282 other normal closing costs, as well as the credit (50%) to the husband for his mortgage payment contributions. The wife shall also receive a credit for reduction of the mortgage principal from the date of judgment to the date of closing of title.
 Should the wife exercise her option to purchase prior to July 1, 1998, title will close within sixty (60) days thereafter. The purchase price shall be fifty (50%) percent of the equity in the property, determined as follows: the appraisal price reduced by the then outstanding principal balance on the mortgage and normal closing costs. In addition, the husband will be credited fifty (50%) percent of his contribution towards the mortgage payments and the wife will receive credit for any reduction in the mortgage principal.
 The court reserves jurisdiction on any issue involving this real estate that the parties are unable to resolve.
6. PERSONAL PROPERTY DIVISION
 A. The wife and husband shall attempt to agree upon the disposition of the personal property located at 35 Hyde Lane, Westport, Connecticut and at 1 Wolfpit Road, Unit 8, Norwalk, Connecticut. In the event that the parties are unable to reach an agreement, the issue shall be referred to the Family Relations Division for mediation, and if unsuccessful, to this court for a final resolution.
 B. That each party shall retain one share of the Citi-Minneapolis Real Estate Limited Partnership. Each party shall be responsible for, pay and indemnify and hold the other party harmless against any and all expenses relating to his or her respective share. The husband shall be responsible for and shall pay for all expenses related to his one share for both 1993 and 1994. The wife has already paid the 1993 and one-half of the 1994 expenses attributable to her share.
 C. The wife shall retain the following assets free from any claim of the husband:
(a) Chase Manhattan Bank checking account;
(b) Alliance checking account; CT Page 5283
(c) Franklin Federal Tax Shelter;
(d) Liberty Life Insurance Policy;
(e) IDS IRA;
(f) IDS Annuity;
(g) State of Connecticut Teacher's Retirement; and
(h) Remaining balance in IDS Keogh.
 The court was unpersuaded by the husband's claim to equally divide the Franklin Fund, which has a present balance of about $120,318 and the pension funds of about $122,361 held solely in the wife's name. The Franklin Fund came from the profit of about $153,000 she made on the Imperial Avenue home in October, 1990. The wife owned this real estate in 1976 prior to the marriage and she paid for the major improvements. The wife has withdrawn about $40,000 from this Fund during the past year to improve and maintain the marital home. She will continue to withdraw from it during the next four years to keep the marital home for herself and Rachel. She is solely entitled to this Fund. She is also entitled to keep the pension funds of $122,361 that she earned and which is substantially more than the husband's. By the husband's own testimony, the wife worked harder and longer. The husband had the same opportunity and ability but voluntarily chose to work less.
 D. The husband shall retain the following assets, free from any claim of the wife:
(a) Chase checking account;
(b) Northwest National Life Insurance Policy;
(c) IDS IRAs;
(d) Security deposit;
(e) Wellcraft boat;
(f) 1987 Acura automobile. The wife shall transfer CT Page 5284 title to him within thirty (30) days from the date of this decree.
7. DEBTS
 Each of the parties shall be responsible for his or her own debts as listed on his or her financial affidavits.
8. INCOME TAXES
 If the parties agree to file joint federal and state income tax returns for 1993, each party shall owe and pay the taxes owed or refunds received in proportion to the percentage of their adjusted gross income.
 With respect to any previously filed joint tax return, the party who is responsible for additional taxes by virtue of a disallowance, of a deduction, or inclusion of additional income solely attributable to that party, shall be responsible for that tax and shall indemnify and hold harmless the other party. Any additional tax owed by virtue of a joint deduction disallowed or joint income shall be split equally by the parties.
9. ATTORNEY'S FEES
 Each party shall be responsible for his or her own attorney's fees.
10. MEDICAL AND HOSPITALIZATION INSURANCE
 A. The wife shall provide medical and hospitalization insurance for the benefit of the minor child until she attains the age of eighteen (18) years. The parties shall each be responsible for and shall pay fifty (50%) percent of the premiums for the minor child's medical and hospitalization insurance.
 B. Each party shall be responsible for and shall pay fifty (50%) of the minor child's unreimbursed medical, dental, prescription and hospitalization expenses.
11. LIFE INSURANCE
Each of the parties shall name the minor child beneficiary of CT Page 5285 the life insurance presently in effect on their respective lives in the net amount thereon until the child support obligation terminates. Should either party fail to comply with this obligation, the obligation shall survive that party's death and the amount due shall be a charge upon his/her estate. The parties shall at all times provide satisfactory evidence to each other showing their compliance with the provisions of this paragraph and shall also cause each of the insurance companies to notify the opposing party in the event of a premium default, or any request for a beneficiary change, or in the event of any requests for a loan against said policy.
Judgment shall enter in accordance with the above orders.
ROMEO G. PETRONI, JUDGE